# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GLENN TYLER CHRISTIE,<br>JANET LOUISE CHRISTIE,<br><br>CLAYTON OMAR ZOOK,<br>SANDRA OLIVIA BOUSE,<br>JANET LYNN DOUGLASS,<br>GREGORY ANTHONY RUSSELL,<br>CRYSTAL LYNN LOVE,<br><br>RICKY LEE MORSE,<br><br>CHRISTOPHER PIUS NAGEL,<br>RAEANN BETH NAGEL,<br>BERNARDINE CLEMENTINE NAGEL,<br>TERESE MARIE HUNNEL,<br>GERARD PAUL NAGEL,<br>MICHAEL JOHN NAGEL,<br>MARY MARGARET WILMES,<br>PATRICK JAMES NAGEL,<br>ROBERT CHARLES NAGEL,<br>CAROLYN ANN NAGEL,<br><br>WILLIAM CHRISTIAN NEVINS, KRISTINA NEVINS,<br><br>SCOTT ELLIOTT RIKARD,<br><br>BRYANT KEITH WHITE,<br>GEORGIANA WHITE,<br><br>JOSEPH MARTIN JACKSON,<br>SHEILA LYNN JACKSON,<br>WILLIAM RICHARD JACKSON,<br>MELISSA DAWN JACKSON,<br><br>TIMOTHY MICHAEL SCHOMAKER,<br><br>STEVEN NEAL WILSON,<br>KIMBERLY MICHELLE WILSON, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **PLAINTIFFS'<br>FIRST AMENDED<br>COMPLAINT**<br><br>**Case No.:<br>1:19-cv-01289-BAH**<br><br>**Hon. Beryl A. Howell** |

| | | | |
|---|---|---|---|
| NATHAN FREDERICK BALOY, | § § § | | |
| JACKIE DOUGLAS SWOGGER, JACKIE DOUGLAS SWOGGER, | § § § § | | |
| CHAD ALLEN MCCULLOUGH | § § § | | |
| AND | § § | | |
| LESANDRO E. SANTIAGO | § § | | |
| (Addresses filed under Seal) | § § | | |
| Plaintiffs, | § § | | |
| v. | § | | |
| THE ISLAMIC REPUBLIC OF IRAN The Ministry of Foreign Affairs Imam Khomeini Street Imam Khomeini Square District 12 Tehran, Iran 1136914811 | § § § § § § § § § | | |
| THE ISLAMIC REVOLUTIONARY GUARD CORPS Dowshan Tappeh Jaddeh-ye-Makhsus-e-Qasr-e-Firuzeh, District 14 Tehran, Iran | § § § § § § § § | | |
| IRANIAN MINISTRY OF INTELLIGENCE & SECURITY (a/k/a Vezarat-e Ettela'at Va Amniat-e Keshvar a/k/a VEVAK a/k/a VAJA) Second Negarestan Street Pasdaran Avenue Tehran, Iran | § § § § § § § § § | | |
| Defendants. | § § | | |

# I.  FIRST AMENDED COMPLAINT

Plaintiffs bring this action  under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A  ("FSIA") against Defendants the Islamic Republic of Iran, the Iranian  Islamic Revolutionary Guards Corps ("IRGC") and the Iranian Ministry of Intelligence and Security ("MOIS") for damages  arising out of the June 25, 1996, terrorist attack on the Khobar Towers complex in Dhahran,  Saudi Arabia ("Terrorist Attack").   On that day, Hizbollah terrorists, acting at the direction and with the material support of Defendants Iran and its agents the IRGC and MOIS detonated a 5,000-pound truck bomb outside the  complex, which housed United States military personnel.[1]  The blast from this bomb sheared off  the entire face of the Khobar Towers complex and shattered windows more than a half a mile away.  The blast killed nineteen air force servicemen and  injured many others.   This Court has previously recognized liability for the Terrorist Attack by these Defendants and co-conspirators. [2]

Plaintiffs are thirteen (14) injured members of the armed forces who survived the blast and twenty-one (21) of their  immediate family members.   They seek compensatory and punitive damages under the 28 U.S.C. §1605A (c), and under applicable state and federal law, against Defendants the Islamic Republic of Iran, the Iranian Ministry of Intelligence and Security and the Islamic Revolutionary Guard  Corps, jointly and severally, and in support of their Complaint allege as follows:

---

[1] The pronunciation and spelling of "Hizbollah" ("Hezbollah," "Hizballah," "Hizbu'llah"), is based on region and dialect, but all translate to the "Party of Allah."
[2] *Blais v Islamic Republic of Iran*, 459 F. Supp.  2d 49 (D.D.C. 2006); *Estate of Heiser v Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Rimkus v Islamic Republic of Iran*, 575 F. Supp. 2d 181 (D.D.C. 2008).

## II.     JURISDICTION and VENUE

1.      This Court has jurisdiction over this matter and over the Defendants pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees and agents.

2.      28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury and related torts.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## III.     THE PARTIES

### A. Plaintiffs

4.      Plaintiff **Glenn Tyler Christie** is a United States citizen domiciled in the State of Florida.

5.      On June 25, 1996, Glenn Tyler Christie, age 31, was serving in the 4404th Wing (Provisional), United States Air Force, stationed in Dhahran, Saudi Arabia and housed at the Khobar Towers complex.

6.      Mr. Christie was in the kitchen looking out the window on the fourth floor of building Number 127, which faced building Number 131, when the bomb exploded. The explosion shattered the window, blew him across the room and knocked him unconscious. When Mr. Christie regained consciousness, his body was covered with shards of glass, and he was bleeding

4

profusely from a severed artery and cuts all over his head, face, and arms. Mr. Christie was evacuated from the building and transported to a local hospital in Saudi Arabia.

7.     As a result of the attack, Glenn Tyler Christie suffered from a severed artery, traumatic brain injury, shrapnel/glass wounds which were embedded in his head and arms for years following the attack, hearing loss, tinnitus, Post-Traumatic Stress Disorder, depression, anxiety, and headaches.  He continues to suffer from residual physical and psychological injuries as a result of the attack.

8.     Glenn Tyler Christie received extensive medical treatment and was awarded a Purple Heart for his injuries.

9.     Plaintiff **Janet Louise Christie** is a citizen of the United States and domiciled in the State of Florida. She is the mother of Glenn Tyler Christie.

10.     As a result of the June 25, 1996, Terror Attack and of Glenn Tyler Christie's injuries, Janet Christie suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services and economic loss.  Ms. Christie continues to experience the effect of her son's injuries and the emotional toll it has taken on their relationship.

11.     Plaintiff **Clayton Omar Zook** is a United States citizen domiciled in the State of Michigan.

12.     On June 25, 1996, Clayton Omar Zook, age 22, was serving in the United States Air Force in Dhahran, Saudi Arabia and housed at the Khobar Towers complex.

13.     Mr. Zook was sitting on a couch in the Day Room in building 110 when the bomb exploded. He was approximately 200 yards from the center of the explosion.  The explosion shattered glass throughout the Day Room, shook the entire building and threw Mr. Zook from the

5

couch, seriously injuring his left shoulder.  Mr. Zook evacuated the building and immediately ran to the scene of the blast where he witnessed mass casualties and chaos.  Although injured, he assisted in the search and rescue, evacuation and transportation of bodies of the wounded and dead. Mr. Zook triaged and treated numerous seriously wounded service people.  The smell of the blood mixed in with the heat and humidity is something that Mr. Zook cannot forget to this day.

14.     As a result of the attack, Clayton Omar Zook suffered a Superior Labrum from Anterior to Posterior (SLAP) tear in his left shoulder, TMJ, tinnitus, Post-Traumatic Stress Disorder, depression, anxiety, recurrent intrusive thoughts, and stress-related gastrointestinal disorders for which he has received extensive medical treatment. He continues to suffer from and be treated for these injuries.

15.     Plaintiff **Janet Lynn Douglass** is a citizen of the United States and domiciled in the State of Colorado. She is the mother of Clayton Omar Zook.

16.     Plaintiff **Crystal Lynn Love** is a citizen of the United States and domiciled in the State of Michigan. She is the sister of Clayton Omar Zook.

17.     Plaintiff **Gregory Anthony Russell** is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Clayton Omar Zook.

18.     As a result of the June 25, 1996 Terrorist Attack and Clayton Omar Zook's injuries, family members Janet Lynn Douglass, Crystal Lynn Love, Gregory Anthony Russell, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services and economic loss. The injuries suffered by Clayton Omar Zook continue to have a lasting effect on the family and have taken a significant toll on their relationship with Mr. Zook.

19.     Plaintiff **Sandra Olivia Bouse** is a citizen of the United States and domiciled in the State of Texas. She is the former spouse of Clayton Omar Zook and was married to Mr. Zook at the time of the attack.  As a result of the June 25, 1996, Terrorist Attack and Clayton Omar Zook's injuries, Ms. Bouse, suffered severe mental anguish, extreme emotional pain and suffering, loss of consortium, loss of services and economic loss.  The effect of the attack on Mr. Zook took a toll on their marriage and resulted in their divorce in 1997.

20.     Plaintiff **Ricky Lee Morse** is a United States citizen domiciled in the State of Louisiana. On June 25, 1996, Ricky Lee Morse, age 22, was serving in the United States Air Force, assigned to the 20th Fighter Wing, stationed in Dhahran, Saudi Arabia and housed at the Khobar Towers complex.

21.     Mr. Morse had just laid down in his bed on the fifth floor of building 130 when the bomb detonated. The blast caused the window in his room facing the explosion to shatter, resulting in shrapnel and glass-shard wounds to his head, arms, legs and feet.  The explosion blew the air conditioning unit and door to the room on top of him making it difficult for him to breathe. Eventually, Mr. Morse was able to remove the A/C unit and door from his body, and while injured, assist in evacuating and administering first aid to wounded Airmen.  During that time Mr. Morse observed numerous, severely wounded Airmen and the bodies of the deceased Airmen.

22.     Mr. Morse was awarded a Purple Heart for injuries sustained in the attack.

23.     As a result of the attack, Mr. Morse suffered, shrapnel wounds to his head, arms and legs, bruises, hearing loss, tinnitus, depression, anxiety, night terrors, panic attacks, sleeping problems, recurring headaches, and Post-Traumatic Stress Disorder.  He continues to suffer from

Post-Traumatic Stress Disorder, hearing loss, tinnitus, depression, anxiety, frequent headaches and other residual physical and psychological injuries as a result of the attack.

24.     Plaintiff **Christopher Pius Nagel** is a United States citizen domiciled in the State of California.

25.     On June 25, 1996, Christopher Pius Nagel, age 30, was serving in the 4404th Maintenance Squadron, 4404th Wing (Provisional), United States Air Force,  stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

26.     At the time of the attack, Mr. Nagel was in his room facing a window, in the direction of the explosion. He was north of building 131, approximately 120 yards from where the explosion occurred. The explosion shattered all of the windows in the room, and threw Mr. Nagel off his feet, across the room, causing him to strike his head against wall lockers, which then fell on top of him, resulting in injuries to his head, neck, back, shoulders, and both ankles. Mr. Nagel was hit by shards of glass and flying debris, which caused multiple cuts and bruises to his head and body. Disoriented, in pain, with loud ringing in his ears and fearing another terror attack, Mr. Nagel picked himself up, cared for his wounds and went on to render first aid and help evacuate severely wounded Airmen to a casualty collection point and ambulances.

27.     As a result of the attack, Christopher Pius Nagel suffered cuts and severe bruising to his body, head, neck, back, shoulders and both ankles; headaches; tinnitus; severe Post-Traumatic Stress Disorder, depression and anxiety.  To this day Mr. Nagel continues to suffer from tinnitus, mild chronic tendonitis to his right shoulder, mild chronic tendonitis with post-traumatic medial malleolar changes in his right ankle, mild chronic tendonitis in his left ankle, Post-Traumatic Stress Disorder, depression, anxiety, anger, and other psychological effects from being

hit by the blast wave, his injuries caused by the blast wave, and witnessing mass casualties and destruction following the attack. Mr. Nagel is rated at 100% disabled by the United States Veterans Affairs.

28.     Plaintiff **Bernardine Clementine Nagel** is a citizen of the United States and domiciled in the State of North Dakota. She is the mother of Christopher Pius Nagel.

29.     Plaintiff **Michael John Nagel** is a citizen of the United States and domiciled in the State of North Dakota. He is the brother of Christopher Pius Nagel.

30.     Plaintiff **Gerard Paul Nagel** is a citizen of the United States and domiciled in the State of North Dakota. He is the brother of Christopher Pius Nagel.

31.     Plaintiff **Patrick James Nagel** is a citizen of the United States and domiciled in the State of North Dakota. He is the brother of Christopher Pius Nagel.

32.     Plaintiff **Robert Charles Nagel** is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Christopher Pius Nagel.

33.     Plaintiff **Terese Marie Hunnel** is a citizen of the United States and domiciled in the State of Utah. She is the sister of Christopher Pius Nagel.

34.     Plaintiff **RaeAnn Beth Nagel** is a citizen of the United States and domiciled in the State of Colorado. She is the daughter of Christopher Pius Nagel.

35.     Plaintiff **Carolyn Ann Nagel** is a citizen of the United States and domiciled in the State of California. She is the sister of Christopher Pius Nagel

36.     Plaintiff **Mary Margaret Wilmes** is a citizen of the United States and domiciled in the State of California. She is the sister of Christopher Pius Nagel.

Case 1:19-cv-01289-BAH   Document 9   Filed 05/28/19   Page 10 of 37

37.      Mr. Nagel comes from a large and close family.  As a result of the Terrorist Attack and injuries suffered by Christopher Nagel, Bernardine Clementine Nagel, Michael John Nagel, Gerard Paul Nagel, Patrick James Nagel, Robert Charles Nagel, Terese Marie Hunnel, RaeAnn Beth Nagel, Carolyn Ann Nagel, Mary Margaret Wilmes suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium and economic loss. The injuries suffered by Christopher Nagel continue to have a lasting effect on the family and have taken a significant toll on their relationship with Mr. Nagel.

38.      Plaintiff **William Christian Nevins** is a United States citizen domiciled in the State of Florida.

39.      On June 25, 1996, William Christian Nevins, age 26, was serving in the 71st Rescue Group, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

40.      Mr. Nevins was on the fifth floor of building 131 when the explosion occurred. He was blown off his feet, landed flat on the floor, and was hit by flying debris and shards of glass from shattered windows.  After the explosion, Mr. Nevins was lying in the dark, disoriented and in pain. He was suffering from tinnitus, hearing loss, headache, bruising and abrasions to his body including a large piece of glass protruding out of his left knee.

41.      Although injured and in fear of another attack, Mr. Nevins began searching for survivors and helped set up a triage area where he treated and moved the casualties, which included several of his friends, as well as transported bodies of the deceased.  Later, Mr.  Nevins accompanied his commanding officer to identify bodies at the morgue,  at which time he identified the body of one of his close friends.

42.     As a result of the attack, William Christian Nevins suffered bruising, shrapnel wounds, deep cuts, and glass to his body, severe Post-Traumatic Stress Disorder, depression, fatigue, anxiety, headaches, tinnitus, and hearing loss. Mr. Nevins continues to suffer from Post-Traumatic Stress Disorder, major depression, anxiety, fatigue, severe tinnitus, and scarring on his left knee from shrapnel. He also experiences memory and comprehension problems and survivor's guilt as a result of the attack.

43.     Plaintiff **Kristina Nevins** is a citizen of the United States and domiciled in the State of Florida. She is the spouse of William Christian Nevins.  As a result of the June 25, 1996, Terrorist Attack and Mr. Nevins' injuries, Kristina Nevins, suffered severe mental anguish, extreme emotional pain and suffering, loss of consortium, society and companionship and economic loss. Mrs. Nevins continues to experience the effects of her husband's injuries and the toll it has taken on their relationship.

44.     Plaintiff **Scott Elliott Rikard** is a United States citizen domiciled in the State of Utah.

45.     On June 25, 1996, Scott Elliott Rikard, age 33, was serving in the 4404th Security Police Squadron, 4404th Support Group, 4404th Wing (Provisional), United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

46.     Scott Elliott Rikard had just come off his shift and was in building 120 on the seventh floor when the bomb detonated.  He heard the explosion and felt the concussion of the blast move through his body. Mr. Rikard, suffered from abrasions to his body, as he ran down the stairs to the first floor to assist in evacuating casualties from the building.

Case 1:19-cv-01289-BAH   Document 9   Filed 05/28/19   Page 12 of 37

47.     While at the blast site immediately following the explosion, Mr. Rikard helped assemble, evacuate, transport and administer first aid to wounded casualties and carry stretchers with body parts.

48.     As a result of the attack, Scott Elliott Rikard suffered abrasions, severe Post-Traumatic Stress Disorder, depression, anxiety, sleep issues, and survivor's guilt. He continues to suffer from these emotional and psychological effects of the attack.

49.     Plaintiff **Bryant Keith White** is a United States citizen domiciled in the State of Oregon.

50.     On June 25, 1996, Bryant Keith White, age 24, was serving in the 4404th Civil Engineer Squadron, 4404th Support Group, 4404th Wing (Provisional), United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

51.     Mr. White was in his room, lying on his bed, on the fifth floor of building 133 immediately adjacent to the blast, when the bomb detonated. The explosion threw Mr. White out of his bed, shattered the windows, and blew solid double doors off its hinges, slamming Mr. White in the head and landing on top of him.  Mr. White was rendered unconscious for an unknown amount of time and sustained deep lacerations to his head and shrapnel wounds to his head, back feet and arms.

52.     With total disregard for his personal safety and while in severe pain, Mr. White left his room barefoot, with glass embedded in his feet, to help search the building for wounded and survivors. He assisted in evacuating the wounded from the building to the casualty collection point and rendering first aid. He was then treated for his wounds and evacuated to a British hospital for additional treatment.  Mr. White was awarded a Purple Heart for his injuries.

53.     As a result of the attack, Bryant Keith White suffered a concussion; deep laceration to his head; metal shrapnel in his forehead; shrapnel and glass wounds to his back, feet, and arms; severely painful injuries to his neck and back; whiplash; muscle spasms; Post-Traumatic Stress Disorder; severe headache; tinnitus; hearing loss and bruising. Mr. White received extensive medical treatment for his injuries. He continues to suffer from chronic neck and back pain; muscle spasms; frequent headaches; Post-Traumatic Stress Disorder; tinnitus; permanent metal shrapnel that remains embedded in his forehead and scarring.

54.     Plaintiff **Georgiana White** is a citizen of the United States and domiciled in the State of Oregon. She is the spouse of Bryant Keith White.  As a result of the June 25, 1996, Terrorist Attack and Bryant White's injuries, Georgiana White, suffered severe emotional and mental anguish, loss of consortium, society and companionship and economic loss.  Mrs. White continues to experience the effects of her husband's injuries, the change to his personality since the attack and the toll it has taken on their relationship.

55.     Plaintiff **Joseph Martin Jackson** is a United States citizen domiciled in the State of Louisiana.

56.     On June 25, 1996, Joseph Martin Jackson, age 22, was serving in the United States Air Force, stationed in Dhahran, Saudi Arabia and housed at the Khobar Towers complex.

57.     Mr. Jackson was in his room and had just woken up for the night shift when the explosion occurred. The building in which he was located, was across the parking lot from building 131.  As a result of the explosion, Mr. Jackson was blown out of his bed, across the room and into a wall. He was hit by shattered glass and flying debris. Mr. Jackson immediately suffered severe pain to his upper body and head, dizziness, tinnitus, hearing loss, multiple cuts from the shattered

glass, bruising to his body, and injuries to both shoulders that required multiple surgeries.  Mr. Jackson was eventually able to extricate himself from under the debris and evacuate the building. Although seriously injured, Mr. Jackson assisted in triaging the wounded and treating casualties. During that time he observed bodies of the deceased Airmen and severe injuries on hundreds of wounded airmen.  Joseph Martin Jackson received extensive medical treatment for his injuries, including multiple surgeries.

58.     As a result of the Terrorist Attack, Joseph Martin Jackson continues to suffer from left and right shoulder impingement, hearing loss, tinnitus, frequent headaches, Post-Traumatic Stress Disorder, depression, anxiety, sleep problems and other residual physical and psychological injuries related to the attack.

59.     Plaintiff **Sheila Lynn Jackson** is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Joseph Martin Jackson.

60.     Plaintiff **William Richard Jackson** is a citizen of the United States and domiciled in the State of Ohio.  He is the father of Joseph Martin Jackson.

61.     Plaintiff **Melissa Dawn Jackson** is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Joseph Martin Jackson.

62.     As a result of the June 25, 1996, Terrorist Attack and Joseph Martin Jackson's injuries, family members Sheila Lynn Jackson, William Richard Jackson, and Melissa Dawn Jackson suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services and economic loss.  The family continues to suffer, from the physical and psychological effect the attack had on their son and brother and the toll it has taken on their relationship.

63.     Plaintiff **Timothy Michael Schomaker** is a United States citizen domiciled in the State of Arizona.

64.     On June 25, 1996, Timothy Michael Schomaker, age 21, was serving in the United States Air Force, assigned to 4404th Communications Squadron, 4404th Support Group, 4404th Wing (Provisional), and stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

65.     Timothy Michael Schomaker was in his room on the seventh floor of building 103 when the bomb exploded.  The explosion knocked him off balance, and slammed him against furniture, causing hearing loss and ringing in his ears.  During and following the evacuation of building 103, Mr. Schomaker was deeply traumatized as he observed many severely wounded military personnel. He cleaned the blood off walls and floors, swept up the blood-soaked glass, moved the bloodstained furniture, and was part of the team that carried the caskets of the deceased Airmen that were being transported back to the United States.

66.     Mr. Schomaker suffered deeply from what he witnessed and experienced immediately following the attack. To this day, he suffers from anxiety, depression, hypervigilance, survivor's guilt, Post-Traumatic Stress Disorder, tinnitus, and hearing loss, as a result of the bombing.

67.     Plaintiff **Steven Neal Wilson** is a United States citizen domiciled in the State of Florida.

68.     On June 25, 1996, Steven Neal Wilson, age 26, was serving in the 4404th Security Police Squadron, 4404th Support Group, 4404th Wing (Provisional), United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

15

69.     Steven Neal Wilson was standing on the third-floor balcony in building 129 when the bomb exploded. The effect of the blast caused Mr. Wilson to be thrown through a sliding glass door and across the room, knocking him unconscious.  Mr. Wilson regained consciousness with severed flexor tendons in his left hand, a traumatic brain injury, shrapnel wounds to his head and body, severe tinnitus, hearing loss, and bleeding.  Although injured, Mr. Wilson, attempted to assist in transporting casualties and triaging wounded service members,  but was evacuated to a local hospital for his injuries. He was taken to a hospital in Germany and then transported to the Air Force Academy in Colorado for further treatment, which included surgery, physical therapy, and occupational therapy.

70.     Mr. Wilson was awarded a Purple Heart for injuries he sustained in this attack.

71.     As a result of the attack, Steven Neal Wilson suffered a traumatic brain injury, shrapnel wounds to his head and body, severed flexor tendons in his left hand, hearing loss and tinnitus.  Mr. Wilson received extensive medical treatment for his injuries and continues to do so. He continues to suffer from the effects of the TBI, impairment of left hand-lacking full mobility, permanent scarring, shrapnel embedded in his skull, tinnitus, and hearing loss which requires the use of hearing aids, tendonitis, Post-Traumatic Stress Disorder, anxiety, and sleep issues from the attack.

72.     Plaintiff, **Kimberly Michelle Wilson** is a citizen of the United States and domiciled in the State of Alabama. She is the former spouse of Steven Neal Wilson and was married to Mr. Wilson at the time of the attack.

73.     As a result of the June 25, 1996, Terrorist Attack and Steven Wilson's injuries, Kimberly Wilson suffered severe mental anguish, extreme emotional pain and suffering, loss of

consortium, loss of services and economic loss.  The stress of Mr. Wilson's injuries and the psychological effect of the attack on Mr. Wilson took a toll on their marriage, which ended in divorce.

74.     Plaintiff **Nathan Frederick Baloy** is a United States citizen domiciled in the State of Virginia.

75.     On June 25, 1996, Nathan Frederik Baloy, age 21, was serving in the 4404th Security Police Squadron, 4404th Support Group, 4404th Wing (Provisional), United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

76.     Mr. Baloy was in his room on the third floor in building 129, located behind building 131 when the bomb exploded.  The explosion knocked him unconscious, blew a sliding glass door off its frame that impaled his right knee, and shattered the window causing glass and shrapnel wounds to his left foot and throughout his body. When Mr. Baloy regained consciousness he was disoriented, bleeding, his ears were ringing, and he suffered from hearing loss.  Mr. Baloy was carried out of the building and received medical treatment at the scene.

77.     Mr. Baloy was awarded a Purple Heart for the injuries sustained in this attack.

78.     As a result of the attack, Nathan Frederick Baloy suffered a serious glass wound to his knee, shrapnel throughout his body and left foot, severe headaches, bruising, tinnitus, hearing loss, Post-Traumatic Stress Disorder, depression, anxiety, and sleeping problems. Mr. Baloy continues to suffer from right knee pain, scarring, Post-Traumatic Stress Disorder, anxiety, sleep issues, and depression.

79.     Plaintiff **Jackie Douglas Swogger** is a United States citizen domiciled in the State of California.

80.     On June 25, 1996, Jackie Douglas Swogger, age 20, was serving in the 4404th Supply Squadron, 4404th Support Group, 4404th Wing (Provisional), United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

81.     Jackie Douglas Swogger was on the seventh floor in building 127 when the bomb detonated. The explosion blew him across the room and partially out of the window.

82.      Immediately following the attack, Mr. Swogger was in excruciating pain, with a fractured left shoulder, a severely bruised right knee, blast pressure damage to his right ear, and a severe headache.  Mr. Swogger received medical treatment at the scene.

83.     Although injured, Mr. Swogger assisted in searching building 131 where he observed many of the seriously injured military personnel.  While sweeping the building he found the bodies of two of the deceased Airmen.

84.     As a result of the attack, Jackie Douglas Swogger suffered a fractured left shoulder, severely bruised right knee, blast pressure damage to his right ear, tinnitus, hearing loss, and Post-Traumatic Stress Disorder. Mr. Swogger continues to suffer from severe Post Traumatic Stress Disorder, left shoulder problems, damage to his right ear, hearing loss, which requires the use of hearing aids, severe tinnitus, chronic knee pain, painful scarring, sleep problems, anxiety, depression, panic attacks, anger, and survivor's guilt.

85.     Plaintiff **Jackie Douglas Swogger** is a citizen of the United States and domiciled in the State of Oregon. He is the father of his namesake, Jackie Douglas Swogger.

86.     As a result of the June 25, 1996, Terrorist Attack and Jackie Swogger's injuries, his father, Mr. Swogger, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services and economic loss.  Mr. Swogger continues to suffer from the toll the

attack has taken on his son both physically and psychologically and the effect it has had on their relationship.

87.     Plaintiff **Chad Allen McCullough** is a United States citizen domiciled in the State of Pennsylvania.

88.     On June 25, 1996, Chad Allen McCullough, age 21, was serving in the United States Air Force assigned to the 4404th Supply Squadron, 4404th Support Group, 4404th Wing (Provisional), stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

89.     Chad Allen McCullough was on the third floor in building 127, facing a window when the bomb detonated. He observed a flash, before the blast shattered the window, sent glass shards into his left shoulder and the left side of his chest, knocked him over, and caused painful ringing to his ears. Mr. McCullough evacuated to the triage area where he was able to remove the shrapnel from his body and apply bandages to his wounds.  While at the site of the blast, Mr. McCullough assisted in rendering first aid to other wounded Airmen and helped transport the wounded to the casualty collection point.

90.     Mr. McCullough further, assisted in the search and cleanup of building 131 and carried coffins of the deceased Airmen during the memorial ceremony.

91.     As a result of the attack, Chad Allen McCullough suffered shrapnel wounds, tinnitus, Post-Traumatic Stress Disorder, depression and panic attacks. Mr. McCullough continues to suffer from these injuries associated with the attack.

92.     Plaintiff **LeSandro E. Santiago** is a United States citizen domiciled in the State of Florida.

93.     On June 25, 1996, LeSandro E. Santiago, age 21, was serving in the 4404th Services Squadron, 4404th Support Group, 4404th Wing (Provisional), United States Air Force stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.

94.     At the time of the explosion, LeSandro E. Santiago was located inside the fitness center in garage number 12, near the Desert Rose Dining Facility. He was approximately ten feet from the entrance when the lights flickered and the entrance to the fitness center caved in. The blast threw Mr. Santiago approximately six to ten feet across the room. He was hit by flying debris from a wall that fell down behind him. As a result of the explosion, Mr. Santiago sustained lacerations and bruising to his body, including a shrapnel wound to his left wrist, tinnitus, hearing loss and trauma to his left kidney.

95.     Although injured, Mr. Santiago assisted medical personnel with treating wounded Airmen at the casualty collection point where he observed many of those injured with severe wounds. Without regard to his personal safety and in total darkness Mr. Santiago responded to the search and rescue in building 131. In the midst of destroyed and unstable buildings he began removing and processing remains of his fellow Airmen. LeSandro Santiago was awarded the Air Force Commendation Medal with Valor and Airman of the Month for his heroism following the attack.

96.     As a result of the blast Mr. Santiago suffered lacerations and bruising to his body including a 1.5-inch shrapnel wound to his left wrist which has resulted in scarring; hearing loss and tinnitus in the left ear, trauma to his left kidney, Post-Traumatic Stress Disorder and further emotional and psychological injuries. He continues to suffer from and be treated for these injuries.

Case 1:19-cv-01289-BAH   Document 9   Filed 05/28/19   Page 21 of 37

## B.   **Defendants.**

97.     Defendant, The Islamic Republic of Iran**,** has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, (50 U.S.C. § 2405(j)) continuously since January 19, 1984.

98.     The Government of Iran is politically and ideologically hostile to the United States and its allies, and has consistently provided material support for acts of international terrorism, including extrajudicial killings, torture, and hostage taking, particularly through the MOIS, IRGC, and its Lebanese-based Hizbollah, which historically have served as Iran's proxies and agents, enabling Iran to project extremist violence and terror throughout the Middle East and around the globe.

99.     More specifically, Iran provides, sponsorship, material support, and resources to Hizbollah, a known terrorist organization, by providing it with funding, weapons, direction, and training to carry out terror attacks, which consist of extrajudicial killings, torture, and hostage taking as those terms are defined in the FSIA, 28 U.S.C. § 1605A(a)(1).

100.    The formation and emergence of Hizbollah as a major terrorist organization is largely due to the government of Iran. Defendants, MOIS and the IRGC**,** have been the primary instruments used by Iran to provide Hizbollah with funding, training, weapons and other essential material support.

101.    The significant support provided by Iran enables Hizbollah to be a terror organization capable of recruiting terrorists and carrying out large-scale terrorist attacks, like the attack on the Khobar Towers complex.

102.    The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under 28 U.S.C. § 1605(a)(7) (predecessor to 28 U.S.C. § 1605A) to victims of state-sponsored terrorism for the acts and actions of Hizbollah in cases before this Court, including, *Anderson v. The Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. Islamic Republic of Iran*, 18   F.  Supp. 2d 62 (D.D.C. 1998).

103.    The Islamic Republic of Iran has also been found liable by this Court for the June 25, 1996, Terrorist Attack on the Khobar Towers, that is in the subject of this Complaint.  See, *Rimkus v. Islamic Republic of Iran,* 575 F. Supp. 2d 181 (D.D.C.  2008); *Blais v. Islamic Republic of Iran, et al.*, 459 F. Supp. 2d 40 (D.D.C.  2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

104.    Describing the role Iran and its agents played in the Khobar Towers' attack, the court in *Rimku*s stated as follows:

> "The totality of the evidence at trial, combined with the findings  and conclusions entered by this court in *Blais* and *Heiser*, firmly establishes that the Khobar Towers bombing was planned, funded, and sponsored by senior leadership in the government of the Islamic Republic of Iran, the IRGC had the  responsibility and worked with Saudi Hezbollah to execute the plan, and the MOIS participated in the planning and funding of the attack." *Rimkus v. Islamic Republic of Iran, et al*., 575 F. Supp. 2d 181 (District of Columbia, August 26, 2008)

105.    Defendant, the Islamic Republic of Iran, is thus collaterally estopped from denying that it is liable for the acts and actions of its agent, Hizbollah in carrying out the Terrorist Attack at issue here.

106.    Defendant, MOIS,  is the Iranian intelligence service and functions both within and beyond Iranian territory.  It supports Iran's international terrorist activities by providing material support, including resources and intelligence, for the commission of acts of extrajudicial killing,

torture and hostage-taking.  This Court has consistently found MOIS to be a political subdivision of Iran for purposes of liability and damages under the FSIA.[3]

107.     Here, MOIS, acting as an agent of Iran, performed acts, which caused the terrorist bombing of Khobar Towers.  MOIS assisted Hizbollah's terrorist activities through the provision of material support and resources including intelligence, funds, training, supplying weapons and direction to Hizbollah.  MOIS performed these acts while acting within the scope of its agency for Iran, and specifically performed these acts in support of Hizbollah's bombing of the Khobar Towers on June 25, 2006.

108.     This Court has repeatedly held Defendants, Iran and MOIS, liable as state sponsors of Hizbollah's terrorist activities pursuant to 28 U.S.C. § 1605(a)(7). [4]

109.     Defendant, IRGC, also known as Pasdaran, is a military organization and a branch of the Islamic Republic of Iran.

110.     The IRGC has been described as 'a nontraditional instrumentality of Iran' that acts as 'the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran.' *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d at 187 (quoting *Heiser,* 466 F. Supp. 2d at 251-52 and *Blais,* 459 F. Supp. 2d at 47).

---

[3] *See, e.g.*, *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 71-722 (D.D.C. 2010); *Bennett v. Islamic Republic of Iran*, 507 F. Supp. 2d 117, 125 (D.D.C. 2007) ("Defendant MOIS is considered to be a division of state of Iran, and is treated as a member of the state of Iran itself."); *Salazar v. Islamic Republic of Iran*, 370 F.Supp.2d 105, 116 (D.D.C. 2005).

[4] *See, e.g., Surette v. Islamic Republic of Iran,* 231 F. Supp. 2d 260, 267 (D.D.C. 2002); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002*); Wagner v. Islamic Republic of Iran,* 172 F. Supp.2d 128 (D.D.C. 2001*); Jenco v. Islamic Republic of Iran*, 154 F.Supp.2d 27 (D.D.C. 2001); *Sutherland v. Islamic Republic of Iran,* 151 F. Supp.2d 27 (D.D.C. 2001); *Anderson v. Islamic Republic of Iran,* 90 F. Supp.2d 107 (D.D.C. 2000*).*

111.    The IRGC "constitute[s [an] integral part[] of Iran's political structure, and thus, constitute[s] a foreign state for [FSIA] purposes." *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018).

112.    Founded after the 1979 Islamic Revolution in Iran, the IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and the Islamic Republic of Iran and is dedicated to the export of Islamic Fundamentalism principles throughout the world through acts of terrorism.

113.    The IRGC is the agent through which Iran prepared and oversaw the actions relating to the bombing of the Khobar Towers in Dhahran, Saudi Arabia on June 25, 1996. The IRGC, acting as an agent of the Islamic Republic of Iran, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training, and direction to Hizbollah for its terrorist activities that caused the injuries to Plaintiffs herein.

114.    The IRGC has consistently been found liable as a foreign state supporting international terrorism under 28 U.S.C. § 1605(a)(7) for the acts and actions of Hizbollah in cases before this Court including, *Higgins v. Islamic Republic of Iran*,  2000 U.S. Dist. LEXIS 22173, 2000 WL 33674311(D.D.C., 2000); *Surette v. Islamic Republic of Iran,* 231 F. Supp. 2d 260, 267 (D.D.C. 2002) ; *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005); *Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1 (D.D.C. 2007) and others.

115.    The IRGC has been also found liable by this Court, for overseeing the actions in the attack on the Khobar Towers as detailed in the factual allegations below.  See, *Heiser v Islamic*

*Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006).

## IV.     FACTUAL ALLEGATIONS

116.     In the early 1980s, Iran developed a program of carefully planned terrorist attacks designed to destabilize Middle Eastern governments and spread fundamentalist Islamic principles. To achieve its goal, Iran, through the MOIS and IRGC, established Hizbollah in Lebanon as its proxy terror organization to employ tactics such as kidnapping, torture, and murder. The MOIS and the IRGC provided funding, training, and equipment to Hizbollah enabling it to pursue and achieve its mission. By the early 1990s, the activities of Hizbollah were no longer limited to Lebanon. Its operatives were operating in a number of countries utilizing the tactics taught to them in Iran and the Bekka Valley in Lebanon at facilities established, operated and supported by the Defendants.

117.     In the early 1990s, the United States military developed a presence in Saudi Arabia. Iran viewed the presence of United States personnel, including members of the United States armed forces, as supportive of the corrupt Saudi monarchy, and its pro-Western regime, which opposed the Islamic Republic religious and political ideals and the establishment of an Islamic state in Saudi Arabia.    Iran believed that a large-scale terrorist operation designed to kill Americans, which would lead to significant casualties, would weaken support in the U.S. and its allies for its presence in the region, or weaken support in the host nations for a continued U.S. presence.

118.    To that end, the Iranian government, acting through its agents the MOIS and the IRGC and in concert with the Saudi-based Hizbollah terrorist organization began preparations for the bombing of a target associated with American interests.[5]

119.    In 1995, Iran, through MOIS and the IRGC, prepared to execute an attack on an American target.  Saudi Hizbollah operatives scouted potential American targets in Saudi Arabia, and explosives were smuggled into Saudi Arabia and hidden for later use.  An elaborate professional intelligence network was established and tasked with carrying out the bombing.

120.    The attack itself was approved and supported by the Ayatollah Khomeini, Iran's Supreme Leader at the time, and by Ali Fallaahian, the then-head of the MOIS who provided intelligence security support for the operation and received direct support from his representative in Damascus, Syria.[6]

121.    Individuals were recruited principally by a senior official of the IRGC, Brigadier General Ahmed Sharifi.  Sharifi, who was the operational commander, planned the operation and recruited individuals for the operation at the Iranian embassy in Damascus, Syria. [7]

122.    By June 1996, bomb components, including high explosives, incendiary materials, and sophisticated fuses and tools used in the bomb assembly, were stored in Saudi Arabia.  Agents of Defendants Iran, MOIS, and the IRGC collectively selected and approved Khobar Towers as the target to be destroyed by Hizbollah.

---

[5] Saudi Hizbollah members provided information to the FBI about how each was recruited and trained by the Iranian government and stated that Iran and the IRGC had "collectively" selected the target for the attack, and that "the actual preparation and carrying out of the attack was done by the IRGC." See, *Heiser*, 466 F. Supp. 2d 229,  252-253.

[6] *Blais*, 459 F. Supp. 2d. 40,  48 (D.D.C.2006); *Heiser*, 466 F. Supp. 2d at 252.

[7] *Id.*

123.     The Khobar Towers complex was a residential multi-story apartment building complex in Dhahran, Saudi Arabia that housed United States Air Force and other U.S. military and coalition forces personnel charged with monitoring compliance with U.N. security council resolutions.  The deployment of U.S. troops to the region was considered a "peacetime deployment with a friendly host country."[8]

124.     In the evening of June 25, 1996, shortly before 10:00 p.m. local time, two men drove a stolen Mercedes Benz gasoline tanker truck loaded with at least 5,000 pounds of plastic explosives into the Saudi compound that surrounded the American sector at the al-Khobar military area near Dhahran. The terrorists parked the truck next to the Khobar Towers complex, approximately 80 feet from a building which housed the American personnel.[9]  The men drove away in a stolen getaway vehicle.  A few minutes later, the 5,000-pound truck bomb was detonated. The resulting blast sheared off the entire face of the Khobar Towers complex and shattered windows in virtually every building in the compound and in surrounding buildings up to a mile away.

125.     The truck bomb used in the attack "was assembled at a terrorist base in the Bekaa Valley which was jointly operated by the IRGC and by the terrorist organization known as Hezbollah." [10]

126.     Investigators determined that the force of the explosion was the equivalent of 20,000 pounds of TNT which was, according to the Department of Defense, "the largest non-nuclear explosion ever up to that time." [11]

---

[8] *Blais,* 459 F. Supp.2d at 47; *Heiser* 466 F. Supp. 2d at 251
[9] Referring to Building 131 of the Khobar Towers' Complex
[10] *Blais*, 459 F. Supp. 2d at 48
[11] *Id.*

127.     The explosion killed dozens of persons including nineteen American Airmen and injured hundreds of others.  The blast was so powerful that it was felt twenty miles from the blast site.

128.     Each of the named Defendants collaborated, designed, directed, incited, financed, provided material support, aided, abetted, conspired, and executed acts of terror with Hizbollah. Without the direction and support from Iran, MOIS and IRGC, Hizbollah would otherwise not have had the expertise and skills needed to carry out the attack on the Khobar Towers.

129.     As a result of the June 25, 1996, Terrorist Attack, Plaintiffs Glenn Tyler Christie, Clayton Omar Zook, Ricky Lee Morse, Christopher Pius Nagel, William Christian Nevins, Scott Elliott Rikard, Bryant Keith White, Joseph Martin Jackson, Timothy Michael Schomaker, Steven Neal Wilson, Nathan Frederick Baloy, Jackie Douglas Swogger, Chad Allen McCullough, and LeSandro E. Santiago (collectively "Surviving Injured Plaintiffs") suffered serious physical injury, mental anguish, pain and suffering, and loss of enjoyment of life, which have resulted in past and future non-economic and economic damages, including medical expenses, lost income, and loss of earning capacity.

130.     As a result of the June 25, 1996, Terrorist Attack, Plaintiffs,Bernardine Clementine Nagel, Michael John Nagel, Gerard Paul Nagel, Patrick James Nagel, Robert Charles Nagel, Terese Marie Hunnel, RaeAnn Beth Nagel, Carolyn Ann Nagel, Mary Margaret Wilmes, Kristina Nevins, Georgiana White, Janet Lynn Douglass, Crystal Lynn Love, Gregory Anthony Russell, Sandra Olivia Bouse, Sheila Lynn Jackson, William Richard Jackson, Melissa Dawn Jackson, Janet Louise Christie, Kimberly Michelle Wilson and Jackie Douglas Swogger (father of Jackie Swogger) (collectively "Immediate Family Member Plaintiffs") have suffered severe mental

anguish, extreme emotional distress, pain and suffering, loss of solatium, loss of consortium, loss of society/services/companionship and past and future economic damages.

131.    The Defendants' actions were a substantial factor in the sequence of events that led to the Plaintiffs' injuries. Such injuries were reasonably anticipated as a natural consequence of the Defendants' conduct.

132.    As such, Defendants are directly, jointly, and severally liable for the injuries suffered by Plaintiffs and should, therefore, be held accountable.

## V.    CLAIMS FOR RELIEF

### COUNT I

### ACTION FOR DAMAGES
### By All Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

133.    Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations forth in all the foregoing paragraphs as if fully set forth herein.

134.    Defendant Iran is, and was at all times relevant, a State Sponsor of Terrorism within the meaning of § 1605A(h)(6).

135.    Defendants, MOIS and the IRGC, are each political subdivisions of the State of Iran and as such are treated as the state of Iran for purposes of bringing suit under 28 U.S.C. §1603(a).

136.    Defendants, Iran, MOIS and IRGC, provided substantial, material support and resources to its agent, Hizbollah, within the meaning of 28 U.S.C. Section 1605A, which facilitated and caused the terror attack on the Khobar Towers'.

137.    Defendants funded, trained, directed, aided, abetted, conspired and acted in concert with Hizbollah in sponsoring and carrying out the "extrajudicial killings" of American service

members at the Khobar Towers complex and are therefore are directly liable and vicariously responsible for Hizbollah's actions.

138.    The material support provided by Defendants for the acts of extrajudicial killing resulted in nineteen deaths sand countless personal injuries of U.S. service members, including Plaintiffs, who survived the attack.

139.    Plaintiffs herein are Surviving Injured Plaintiffs and Immediate Family Member Plaintiffs who were injured as a result of the Khobar Towers' bombing.  All Plaintiffs were nationals of the United States at the relevant time of the attack, and thus, are entitled to bring claims under Section 1605A(c).

140.    The Plaintiffs suffered severe harm, including personal injury, emotional distress, mental anguish, pain and suffering, loss of companionship and society, loss of solatium and/or consortium, loss of services, and economic loss  including  medical expenses, lost income and loss of earning capacity , as a direct and proximate cause of  the actions of Defendants, Iran, MOIS, and the IRGC, acting through their agent Hizbollah.

141.    Defendants, MOIS and IRGC, acting on their own as well as agents of the Islamic Republic of Iran, performed acts within the scope of their agency which also caused the injuries to Plaintiffs within the meaning of 28 U.S.C. § 1605A.

142.    The conduct of Iran, MOIS and IRGC was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

143.    Defendants, Iran, MOIS, and the IRGC, are therefore liable for the full amount of Plaintiffs' economic damages, solatium, pain and suffering, and punitive damages under 28 U.S.C. 1605A(c), jointly and severally, in an amount to be determined herein.

## COUNT II

### PERSONAL INJURY- ASSAULT AND BATTERY
### By Surviving Injured Plaintiffs(Under 28 U.S.C. § 1605A(c))

144.     Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations forth in all the foregoing paragraphs as if fully set forth herein.

145.     Hizbollah, with the material support of the Defendants Iran, MOIS and the IRGC, violently and forcefully committed illegal acts during the bombing of the Khobar Towers complex.

146.     Defendants and its agents intended to and did cause great physical injury and harm, and fear and apprehension of imminent harm to the Surviving Injured Plaintiffs, by detonating and/or causing the detonation of a powerful explosive device, described as the equivalent of 20,000 pounds of TNT, in their immediate proximity, causing numerous casualties and destruction.

147.     These willful, wrongful and intentional acts constitute a violent assault and battery upon the bodies and/or minds of the Plaintiffs who are surviving Airmen.

148.     As a direct and proximate result of the willful, wrongful and intentional acts of Hizbollah, with the material support of the Defendants Iran, MOIS and IRGC, each and every one of the Surviving Injured Plaintiffs, namely Glenn Tyler Christie; Clayton Omar Zook; Ricky Lee Morse; Christopher Pius Nagel; William Christian Nevins; Scott Elliott Rikard; Bryant Keith White; Joseph Martin Jackson; Timothy Michael Schomaker; Steven Neal Wilson; Nathan Frederick Baloy; Jackie Douglas Swogger, Chad Allen McCullough and LeSandro E. Santiago suffered extreme mental anguish, physical injury, pain and suffering, past and future economic losses including medical expenses, lost income and loss of earning capacity.

149.     For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs for their injuries in an amount to be determined herein.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By Surviving Injured Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

150.    Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

151.    Defendants provided material support to Hizbollah with the intent that Hizbollah would carry out attacks that would cause Surviving Injured Plaintiffs severe emotional distress.

152.    The actions of Defendants Iran, MOIS, and the IRGC in providing substantial material support to its agent, Hizbollah, to carry out the attack on the Khobar Towers, with the intent to kill and injure U.S. military personnel,  and which  in fact did kill and  injure many U.S. Air Force personnel, including Surviving Injured Plaintiffs, constitute extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

153.    The extensive planning and preparation which went into the attack on the Khobar Towers complex further underscores the malicious and heinous nature of the terrorism involved.

154.    The actions by Defendants were undertaken deliberately and recklessly, with the knowledge that they would cause severe emotional distress to the U.S. Air Force personnel injured in the bombing.

155.    The actions of Defendants were intended to and did, in fact, cause the bombing and subsequently were the cause in fact of the Surviving Injured Plaintiffs' suffering severe emotional distress.

156.    As a direct and proximate result of the actions of the Defendants Iran, MOIS and IRGC and its agent, Hizbollah, the Surviving Injured Plaintiffs have suffered severe mental anguish and emotional distress, pain and suffering, and past and future economic loss, including medical expenses, lost income and loss of earning capacity.

157.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs for their intentional infliction of emotional distress in an amount to be determined herein.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By Immediate Family Members of Surviving Injured Plaintiffs
### (Under 28 U.S.C. § 1605A)

158.    Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

159.    The actions of Defendants in providing material support for the bombing of the Khobar Towers complex constitute extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

160.    The Immediate Family Member Plaintiffs were directly affected by the Defendants' conduct of providing material support to Hizballah, to carry out extrajudicial killings against U.S. Air Force personnel housed at the Khobar Towers complex.

161.    The actions by Defendants were undertaken deliberately and recklessly, with the knowledge that they would cause severe emotional distress to the immediate family members of the U.S. Air Force personnel injured in the bombing of the Khobar Towers.

162.    Plaintiffs Bernradine Clementine Nagel; Michael John Nagel; Gerard Paul Nagel; Patrick James Nagel; Robert Charles Nagel; Terese Marie Hunnel; RaeAnn Beth Nagel; Carolyn Ann Nagel; Mary Margaret Wilmes; Kristina Nevins; Georgiana White; Janet Lynn Douglass; Crystal Lynn Love; Gregory Anthony Russell; Sandra Olivia Bouse; Sheila Lynn Jackson; William Richard Jackson; Melissa Dawn Jackson; Janet Louise Christie; Kimberly Michelle Wilson and Jackie Douglas Swogger who are the immediate family members of  Surviving Injured Plaintiffs were aware that the bombing of the Khobar Towers had taken place, knew that their loved ones

Case 1:19-cv-01289-BAH   Document 9   Filed 05/28/19   Page 34 of 37

were present at the Khobar Towers, feared that their loved ones were killed or injured and ultimately learned that their loved ones survived but were injured in the attack.

163.    The actions of Defendants were intended to and did, in fact, cause the bombing and subsequently were the cause in fact of the Immediate Family Member Plaintiffs suffering severe emotional distress.

164.    As a direct and proximate result of actions of the Defendants Iran, the MOIS and IRGC and its agent Hizbollah, the Immediate Family Member Plaintiffs suffered severe mental anguish and emotional distress, pain and suffering, and past and future economic loss.

165.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs for the intentional infliction of emotional distress, in an amount to be determined herein.

<u>**COUNT V**</u>

<u>**SOLATIUM, CONSORTIUM, PAIN AND SUFFERING**</u>
<u>**By Immediate Family Members of Surviving Injured Plaintiffs**</u>
<u>**(Under 28 U.S.C. § 1605A(c))**</u>

166.    Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

167.    The actions of the Defendants have caused the immediate family members of the surviving injured Plaintiffs to suffer emotional distress, mental anguish and loss of consortium and/or solatium.

168.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah whose acts were funded and directed by Iran, MOIS and IRGC, the Immediate Family Member Plaintiffs have been deprived of the assistance, society, companionship, services and other support of their loved ones who were injured by the Terrorist Attack, for an extended period of time. The Immediate Family Member Plaintiffs are still deprived of the assistance,

society, and companionship of the healthy, active and productive young men they knew and loved prior to the Terrorist Attack described above. This has caused them to suffer, among other things, extreme mental anguish and emotional and physical pain and suffering.

169.    As a result, the Immediate Family Member Plaintiffs are entitled to damages for loss of solatium and/or loss of consortium, loss of services, pain and suffering and past and future economic loss.

170.    For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs in an amount to be determined herein.

## COUNT VI

## PUNITIVE DAMAGES
### (Under 28 U.S.C. § 1605A(c))

171.    Plaintiffs repeat, re-allege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

172.    The actions of Defendants, acting in concert with their agent Hizballah, to carry out their unlawful objectives were malicious and willful, wanton and reckless in their disregard for human life and limb, and caused severe injuries to all the Surviving Injured Plaintiffs and untold pain and suffering to those Plaintiffs who are the immediate family members and loved ones of the injured servicemen.

173.    The actions of Hizbollah were undertaken at such time as they were operating for and in the service of Defendants Iran, MOIS and the IRGC, and in concert with those Defendants, and therefore Defendants are both vicariously and directly liable to Plaintiffs.

174.    Defendants' conduct was criminal, outrageous, extreme, wanton, willful malicious, and constitutes a threat to the public warranting an award of punitive damages.

175.    For the reasons stated above, Defendants Iran, the MOIS and the IRGC are jointly and severally liable to Plaintiffs for punitive damages.


**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court grant judgment in their favor and against Defendants, and grant Plaintiffs:

A.  Compensatory damages including, but not limited to, physical injury, extreme mental anguish, pain and suffering, emotional injury, past and future economic losses, including medical expenses and lost income and earning capacity, loss of solatium, loss of consortium and loss of services,  in favor of each of the Plaintiffs as against Defendants jointly and severally, in amounts to be determined by the Court;

B.  Punitive Damages in favor of each of the Plaintiffs as against Defendants jointly and severally in the amount determined by the Court;

C.  Pre-judgment and Post-judgment interest at the maximum rates allowable by law;

D.  Any other and different relief that the Court deems just and necessary.

Dated:  May 28, 2019                          Respectfully submitted,

/s/  Michael Miller

**The Miller Firm LLC**
Michael J. Miller, Esq.
D.C. Bar No. 397689
108 Railroad Avenue
Orange, VA 22960
Tel: (540)-672-4224
Fax: (540)-672-3055
MMiller@millerfirmllc.com;
DDickens@millerfirmllc.com;
EMaggio@millerfirmllc.com

And

/s/  Gavriel Mairone          ___

**MM~LAW, LLC**
Gavriel Mairone, Esq (*pro hac vice* to be filed)
Illinois Bar No. 618698
Adora Sauer, Esq (*pro hac vice* to be filed)
Illinois Bar No. 6256703
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590
ctlaw@mm-law.com;
adora@mm-law.com

*Counsel for Plaintiffs*