# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLENN TYLER CHRISTIE, et al.,** | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Civil Action No. 1:19-cv-01289-BAH |
| | ) |
| **THE ISLAMIC REPUBLIC OF IRAN, et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO REINSTATE PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES; FOR AN AWARD OF PUNITIVE DAMAGES; AND TO SUPPLEMENT PRIOR REQUEST FOR AN AWARD OF PREJUDGMENT INTEREST

Plaintiffs respectfully submit this Memorandum in support of their Motion to Reinstate Plaintiffs' Demand for Punitive Damages. Plaintiffs also provide this Memorandum in support of Plaintiffs' claims for an award of punitive damages, as a supplement to Plaintiffs' Motion and Amended Memorandum in Support for Default Judgment on Liability and Damages filed with this court on January 29, 2020. (ECF Nos. 35, 36). Plaintiffs' request for Punitive Damages includes proposed calculations of punitive damages to be awarded to each of the thirty-five (35) Plaintiffs. Finally, Plaintiffs submit this Memorandum in further support of Plaintiffs' request for an award of prejudgment interest, set forth in Plaintiffs' Amended Memorandum in Support of Plaintiffs' Motion for Default Judgment on Liability and Damages. (ECF No. 36 at 26-27). Plaintiffs include in this Memorandum, a table with proposed awards, for each of the thirty-five (35) Plaintiffs for compensatory damages, punitive damages, and prejudgment interest.

1

## BACKGROUND

This case concerns the June 25, 1996, terrorist attack on the United States Air Force housing complex, Khobar Towers, in Dhahran, Saudi Arabia. The Attack was one of the deadliest attacks on United States Forces abroad, killing 19 U.S. Airmen and wounding nearly 500 others.

At the time of the Attack, the Khobar Towers complex was housing United States Air Force and other service members who were assigned to Dhahran Air Base in Dhahran, Saudi Arabia, as part of Operation Southern Watch, to enforce a no-fly zone over southern Iraq. The deployment of U.S. troops to the region was considered a peacetime deployment with a friendly host country. The Defendants, The Islamic Republic of Iran, the Iranian Ministry of Intelligence and Security, and the Iranian Islamic Revolutionary Guard Corps (collectively "The Iranian Defendants") provided Saudi Hezbollah with the materials, training, and money necessary to detonate the significant explosion at the Khobar Towers complex, with the intent to harm the Plaintiffs.

The Iranian Defendants engaged in outrageous behavior by providing material support, resources, and training to Saudi Hezbollah to allow them to carry out the attack on U.S. citizens and U.S. interests. Accordingly, these Defendants have previously been held liable for providing material support and resources to the terrorists who carried out the bombing on the Khobar Towers complex. *E.g.*, *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018); *Schooley v. Islamic Republic of Iran*, No. 17-1376; 2019 U.S. Dist. LEXIS 108011 (D.D.C. June 27, 2019)(BAH); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Rimkus v. Islamic Republic of Iran*, 750 F. Supp.2d 163 (D.D.C. 2010).

On May 28, 2019, Plaintiffs filed their Amended Complaint, under the Foreign

Sovereign Immunities Act ("FSIA"), 28 USC Section 1605A (c) for a private right of action, which allows for damages for "economic damages, solatium, pain and suffering, and punitive damages." (ECF No. 9). Plaintiffs' claims included requests for compensatory and punitive damages as well as pre-judgment and post-judgment interest.

On January 29, 2020, Plaintiffs filed a Notice of Withdrawal of Punitive Damages in an effort to receive an expedited ruling from this Court. (ECF No. 34).[1]

**I.      Plaintiffs Should Be Allowed to Reinstate Their Demand for Punitive Damages**

At the time that Plaintiffs filed their Amended Complaint, their right to punitive damages was unsettled. A right to punitive damages was statutorily authorized in 2008 when Congress amended the FSIA in the National Defense Authorization Act (NDAA). 122 Stat. 3. In NDAA §1083(a), Congress created an express federal cause of action for acts of terror that also provided for punitive damages. See 28 U. S. C.§1605A(c). However, the United States Circuit Court of Appeals for the D.C. Circuit had held, in *Owens v. Republic of Sudan*, 864 F.3d 751, 818 (D.C. Cir. 2017), that plaintiffs were not entitled to punitive damages for pre-enactment conduct. The retroactivity of the right to punitive damages under §1605A(c) was then placed before the Supreme Court with a writ of certiorari granted in *Opati v. Republic of Sudan*, 590 U.S. 1 (2020).

In addition to the pending decision on punitive damages for pre-enactment conduct, Plaintiffs' pleaded demand for punitive damages was further complicated by the inevitable difficulties in trying to collect on any judgment in the United States that might be entered against the Iranian Defendants. In an effort to provide compensation and timely relief to certain U.S. persons who were injured in acts of international state-sponsored terrorism, Congress established the United States Victims of State Sponsored Terrorism Fund ("The USVSST

---

[1] The Notice of Withdrawal of Punitive Damages also included the withdrawal of the claims for economic damages, which the Plaintiffs are not moving to reinstate.

3

Fund"). The USVSST Fund makes periodic distributions available to claimants who satisfy the required criteria.

One requirement of the USVSST Fund is an application accompanied by a final judgment under FSIA § 1605A against a relevant State Sponsor of Terrorism (including Iran), which must be submitted prior to a pre-set deadline.

The most recent application deadline for the USVSST Fund was set for February 19, 2020, after an extension of time was made to accept applications under the USVSST Fund Clarification Act, §1701(b)(1)(C)(ii)(II). On January 29, 2020, Plaintiffs filed a Notice of Withdrawal of Punitive Damages as an effort to provide the Plaintiffs the best possibility of receiving a final judgment necessary for the Fund application deadline, and in light of the D.C. Circuit's stance at the time regarding punitive damages under the FSIA; which was that punitive damages could not be imposed retroactively for events prior to enactment in 2008. (ECF No. 34). The attack on Khobar Towers took place in 1996.

On January 29, 2020, Plaintiffs filed their Motion for Default Judgment against Defendants, as to Liability and Damages and Memorandum in Support, excluding their claims for punitive damages and moved for expedited consideration of a final judgment.[2] (ECF Nos. 35, 36). The Plaintiffs' decision to withdraw their demand for punitive damages was based on this Court's request to the similarly situated plaintiffs in *Aceto v. Iran,* No. 19-cv-00464 to withdraw their demand for punitive damages in light of the decision in *Owens* and the pendency of *Opati* in the Supreme Court.[3] The *Aceto* plaintiffs withdrew their demand for punitive damages and this Court

---

[2] Plaintiffs filed an Amended Memorandum in Support of their Motion (ECF No. 36) and Sealed Documentary Evidence (ECF No. 37).
[3] See *Aceto v. Iran,* No. 19-cv-00464, ECF No. 28.

4

then entered judgment in their favor for compensatory judgments, and the *Aceto* plaintiffs were able to submit their applications to the USVSST Fund by the February 19, 2020, deadline.

Acknowledging this Court's request in *Aceto,* which allowed for the entry of a judgement prior to the then-existing deadline for filing with the Fund, Plaintiffs followed and withdrew their demands for punitive damages and requested entry of judgment on an expedited basis. However, judgment was not entered prior to February 19, 2020 deadline and has not yet been entered as of the date of this Memorandum.

On May 18, 2020, the Supreme Court in *Opati*, resolved the issue of punitive damages for pre-enactment conduct, deciding that plaintiffs in a federal cause of action under FSIA §1605A(c) may seek punitive damages for pre-enactment conduct. The Court stated, "Congress was as clear as it could have been when it expressly authorized punitive damages under §1605A(c) and explicitly made that new cause of action available to remedy certain past acts of terrorism." *Opati,* 590 U.S. at 2. This is a material change in the law that should allow plaintiffs to reinstate their request for punitive damages.

To reinstate the punitive damages claims would not prejudice the Iranian Defendants who have failed to appear or otherwise answer Plaintiffs' Complaint (or Amended Complaint) and the Complaint would not require amendment to reinstate the claims. Plaintiffs respectfully argue that the reinstatement of their demand for punitive damages would not unduly burden the Court, as courts have previously determined the calculation of punitive damages, specifically in terrorism cases against Iran. Plaintiffs have provided, as part of this Memorandum, a table with the breakdown of proposed punitive damages for each of the Plaintiffs based on this precedent.

In light of the intervening event of the Supreme Court's decision in *Opati*, which entailed a change of law applicable to this case, combined with the lack of a final judgment and the Iranian

5

Defendants' failure to appear in the action, the Plaintiffs request that this Court grant reinstatement of Plaintiffs' demands for punitive damages.

In addition, Plaintiffs provide the following arguments in support of their Motion for Entry of Default on Punitive Damages as a supplement to their Amended Memorandum in Support filed with this court of January 29, 2020. (ECF Nos. 35, 36).

**II.     This Court Should Award Punitive Damages to Plaintiffs**

Should this Court grant Plaintiffs' motion to Reinstate Plaintiffs' Demand for Punitive Damages, the thirty-five (35) Plaintiffs request that the court award punitive damages against these Iranian Defendants. Plaintiffs incorporate by reference all facts and arguments set forth in Plaintiffs' Motion for Default as to Liability and Damages, Amended Memorandum in Support, and Sealed Documentary Evidence filed with the Court on January 29, 2020, as to why Plaintiffs have a cause of action against the Iranian Defendants and would be entitled to damages under FSIA §1605A(c); which include "economic damages, solatium, pain and suffering, and punitive damages." (ECF Nos. 35–37).

The purpose of punitive damages is to "punish outrageous behavior and deter such outrageous conduct in the future." *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015) (quoting *Bodoff v. Islamic Republic of Iran*, 907 F. Supp. 2d 93, 105 (D.D.C. 2012)); see also RESTATEMENT (SECOND) OF TORTS § 908(1).   In calculating an award of punitive damages under FSIA §1605A(c), courts evaluate four factors: (1) the character of the defendants' act; (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause; (3) the need for deterrence; and (4) the wealth of the defendants. *Id*. (quoting *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)) (additional citations omitted).

All of the four factors above support a substantial award of punitive damages in this case. As detailed during the Khobar Towers bombing trial in the case of *Rimkus,* the court found that the terror attack on the site which housed U.S. servicemen, was horrific, outrageous, and "a deliberate strike at U.S. personnel designed to inflict maximum damages and massive fatalities." *Rimkus*, 750 F. Supp. 2d. at 184-85; *see e.g. Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 88-89 (D.D.C. 2006) (noting that "[t]he defendants' demonstrated policy of encouraging, supporting and directing a campaign of deadly terrorism is evidence of the monstrous character of the bombing that inflicted maximum pain and suffering on innocent.") (citation and quotation marks omitted). The attack killed 19 service members and seriously and permanently injured hundreds more and their families were devastated by the conduct. As courts of this district have held repeatedly, "only a large amount of punitive damages can serve as an effective deterrent against future terrorist acts." *Bodoff*, 424 F. Supp. 2d at 88 (quoting *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 278 (D.D.C. 2003)) (quotation marks omitted). Finally, "Iran is a sovereign and has substantial wealth." *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 25 (D.D.C. 2016) (citing *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 25 (D.D.C. 2002) (additional citations omitted). Thus, the question is the appropriate amount of punitive damages to be awarded.

Courts in this district have applied different methodologies to calculate the appropriate amount of punitive damages ranging from a flat monetary award to applying a multiplier to the state sponsor's expenditures on terrorism over a relevant period. *See*, *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008); *see also Valore v. Islamic Rep. of Iran, 700 F.Supp.2d 52, 88-90 (D.D.C.2010)*; *Heiser*, 659 F. Supp. 2d at 30–31; *Acosta v. Islamic Rep. of Iran, 574 F.Supp.2d 15, 31 (D.D.C.2008)*. More recently, courts have applied a similar

multiplier to the amount of compensatory damages awarded. *See*, *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105-106 (D.D.C. 2017) (calculating punitive damages by multiplying compensatory damages by three); *see also Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50-51 (D.D.C. 2012) (using a factor of three); *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 27-28 (D.D.C. 2017) (awarding punitive damages in the amount of twice compensatory damages).

The attack on the Complex was against U.S. interests, politically motivated, and designed to instill maximum fear and terror in opponents of Iran. The nature of the attacks was brutal, the suffering imposed on the victims and their families substantial, and the victims were specifically targeted because of their service to the United States.

Plaintiffs submit that under the circumstances of this case, the Plaintiffs should be awarded punitive damages for each family in an amount equal to twice the amount of compensatory damages to be apportioned equally amongst each set of plaintiffs. Previously, Plaintiffs' Motion for Default as to Damages and Entry of Final Judgment and Amended Memorandum in Support, and Documentary Evidence in Support detailed Plaintiffs' requests for compensatory damages. (ECF Nos. 35–37). Plaintiffs have included a table, in this Memorandum, which incorporates their proposed compensatory and punitive damage awards, for the Court's convenience.

**III. Plaintiffs Move to Supplement Their Pending Request for Awards of Prejudgment Interest with Proposed Calculations Based on the "*Owens*" Formula**

On January 29, 2020, Plaintiffs filed their Motion for Default Judgment as to Liability and Damages, and Amended Memorandum in Support, which included a request for an award of prejudgment interest. (ECF Nos. 35, 36 at 26-27). The Motion and Amended Memorandum cited to precedent, including a 1605A decision later affirmed by the D.C. Circuit, where the court

awarded prejudgment interest at the prime rate for each year. *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 261-62 (D.D.C. 2014). Plaintiffs offer the arguments below as a supplement to that request; utilizing the *Owens* formula to propose prejudgment interest awards for each of the thirty-five (35) Plaintiffs. *Id.* Toward that end, Plaintiffs have provided a table that incorporates the Proposed awards for Compensatory Damages, Punitive Damages, and Prejudgment Interest, later in this Memorandum.

In *Owens*, the D.C. Circuit has explained that "the prime rate—the rate banks charge for short- term, unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest." *Id.* at 262 (citing *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450-451 (D.C. Cir. 1996). Accordingly, "this Circuit has approved an award of prejudgment interest 'at the prime rate for each year between the accident and the entry of judgment.'" *Id.* (quoting *Forman*, 84 F.3d at 450). The *Owens* court applied this standard using a multiplier derived from the Federal Reserve's historical prime rate data to adjust the base compensatory damages award and detailed the formula used to calculate the multiplier. *See Owens*, 71 F. Supp. 3d at 262 n.6-8 (citing Bd. of Governors of the Fed. Reserve Sys. Historical Data, *available at* http://www.federalreserve.gov/releases/h15/data.htm). Plaintiffs have followed the precise method for calculating the interest rate multiplier described in detail in the *Owens* court's decision. *Id.* Additionally, Plaintiffs have used the same average annual prime rate data set as used in *Owens*, the Federal Reserve Historical Data for the years from the Khobar Attack, 1996, to the present, the potential date of entry of Judgment.[4] Accordingly, Plaintiffs propose the

---

[4] Average Prime Rates for the relevant years to present obtained from the Historical Data Section of the Federal Reserve website. Since the *Owens* decision, has been relocated and was accessed May 28, 2020, here: https://www.federalreserve.gov/datadownload/Review.aspx?rel=H15&series=8193c94824192497563a23e3787878ec&lastobs=&from=01/01/1996&to=12/31/2020&filetype=csv&label=include&layout=seriescolumn.

following prejudgment interest awards (along with Compensatory and Punitive Damages) for each Plaintiff as set forth in the table to follow later in this Memorandum.

When, as here, a statute is silent on the issue of pre-judgment interest, *see* 28 U.S.C. § 1605A(c), there is a federal common-law rule that a court should ordinarily award it. *Motion Picture Ass'n v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992) (*citing Rodgers v. United States*, 332 U.S. 371, 373, (1947)). Furthermore, Courts in this district have regularly awarded prejudgment interest on compensatory damages in other similar cases brought against state sponsors of terrorism. *See, e.g., Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 184 (D.D.C. 2013); *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214-215 (D.D.C. 2012); *Belkin v. The Islamic Republic of Iran*, 667 F. Supp. 2d 8, 24 (D.D.C. 2009); *Pugh v. Socialist People's Libyan Arab Jamahiriya,* 530 F. Supp. 2d 216, 263 (D.D.C. 2008); *Dammarell v. Islamic Republic of Iran*, No. 01-cv-2224, 2006 WL 2583043, at *1, n.2 (D.D.C. Sept. 7, 2006) (awarding prejudgment interest to families of U.S. citizens killed in 1983 bombing of the United States Embassy in Beirut).

Accordingly, Plaintiffs request this Court to award Default Judgment on Liability and Damages as to each Plaintiff and against the Iranian Defendants for compensatory damages, punitive damages, and prejudgment interest in the amounts specified in the proposed table.

| Plaintiff | Relationship | Proposed Compensatory Award[5] | Proposed Award with Prejudgment Interest[6] | Proposed Punitive Damages Award Per Family[7] |
|---|---|---|---|---|
| Glenn Christie | Injured | $7,000,000 | $23,318,941 | |
| Janet Christie | Parent | $2,500,000 | $8,328,193 | |
| **FAMILY TOTAL** | | $9,500,000 | | $19,000,000 |
| Clayton Zook | Injured | $7,000,000 | $25,742,464 | |
| Sandra Bouse | Spouse | $4,000,000 | $13,325,109 | |
| Janet Douglass | Parent | $2,500,000 | $8,328,193 | |
| Gregory Russell | Sibling | $1,250,000 | $4,164,097 | |
| Crystal Love | Sibling | $1,250,000 | $4,164,097 | |
| **FAMILY TOTAL** | | $16,000,000 | | $19,000,000 |
| Joseph Jackson | Injured | $7,000,000 | $23,318,941 | |
| Sheila Jackson | Parent | $2,500,000 | $8,328,193 | |
| William Jackson | Parent | $2,500,000 | $8,328,193 | |
| Melissa Jackson | Sibling | $1,250,000 | $4,164,097 | |
| **FAMILY TOTAL** | | $13,250,000 | | $26,500,000 |
| Christopher Nagel | Injured | $7,000,000 | $23,318,941 | |
| RaeAnn Beth Nagel | Child | $2,500,000 | $8,328,193 | |
| Bernardine Nagel | Parent | $2,500,000 | $8,328,193 | |
| Terese Hunnel | Sibling | $1,250,000 | $4,164,097 | |
| Gerard Nagel | Sibling | $1,250,000 | $4,164,097 | |
| Michael Nagel | Sibling | $1,250,000 | $4,164,097 | |
| Mary Margaret Wilmes | Sibling | $1,250,000 | $4,164,097 | |
| Robert Nagel | Sibling | $1,250,000 | $4,164,097 | |
| Patrick Nagel | Sibling | $1,250,000 | $4,164,097 | |
| Carolyn Nagel | Sibling | $1,250,000 | $4,164,097 | |
| **FAMILY TOTAL** | | $20,750,000 | | $41,500,000 |
| Bryant White | Injured | $7,000,000 | $23,318,941 | |
| Georgiana White | Spouse | $4,000,000 | $13,325,109 | |
| **FAMILY TOTAL** | | $11,000,000 | | $22,000,000 |
| Ricky Morse | Injured | $6,000,000 | $19,987,663 | $12,000,000 |
| Scott Rikard | Injured | $7,000,000 | $23,318,941 | $14,000,000 |
| William Nevins | Injured | $6,000,000 | $19,987,663 | |
| Kristina Nevins | Spouse | $4,000,000 | $13,325,109 | |
| **FAMILY TOTAL** | | $10,000,000 | | $20,000,000 |
| Timothy Schomaker | Injured | $6,000,000 | $19,987,663 | $12,000,000 |
| Steven Wilson | Injured | $7,000,000 | $23,318,941 | |
| Kimberly Wilson | Spouse | $4,000,000 | $13,325,109 | |
| **FAMILY TOTAL** | | $11,000,000 | | $22,000,000 |
| Nathan Baloy | Injured | $7,000,000 | $23,318,941 | $14,000,000 |
| Jackie Swogger | Injured | $7,000,000 | $23,318,941 | |
| Jackie Swogger | Parent | $2,500,000 | $8,328,193 | |
| **FAMILY TOTAL** | | $9,500,000 | | $19,000,000 |
| Chad McCullough | Injured | $5,000,000 | $16,656,386 | $10,000,000 |
| LeSandro Santiago | Injured | $6,000,000 | $19,987,663 | $12,000,000 |

## CONCLUSION

WHEREFORE, for the reasons stated herein and in furtherance of Plaintiffs' Motion for Default on Liability and Damages, Memorandum in Support and Sealed Documentary Evidence pending before this Court (ECF Nos 35-37), Plaintiffs respectfully request this Honorable Court: (1) grant their Motion to Reinstate Punitive Damages; (2) enter an award of punitive damages in favor of all Plaintiffs who received compensatory damages in the amounts proposed by Plaintiffs; and (3) enter an award of prejudgment interest in favor of all Plaintiffs who received compensatory damages utilizing the standards and proposed amounts provided in this supplementation to Plaintiffs original request for prejudgment interest.

---

[5] See Plaintiffs' Amended Memorandum in Support of Default Judgment on Liability and Damages and Documentary Evidence in Support thereof for detailed arguments and facts for proposed compensatory award amounts (ECF 36, 37).

[6] Proposed prejudgment interest awards calculated following the precise formula detailed in *Owens,* "To calculate the multiplier, the Court multiplied $1.00 by the prime rate [from the date of attack] in 1999 (8%) and added that amount to $1.00, yielding $1.08. Then, the Court took that amount and multiplied it by the prime rate in 2000 (9.23%) and added that amount to $1.08, yielding $1.17968. Continuing this iterative process through 2014 yields a multiplier of 2.26185." *Owens v. Republic of Sudan,* 71 F. Supp. 3d at 262 & n.6,7,8 (D.C. Cir. 2014). The *Owens* court calculated the multiplier using the Federal Reserve's historical data for the average annual prime rate for the year of the attack to the present, found at Bd. of Governors of the Fed. Reserve Sys. Historical Data, available at http://www.federalreserve.gov/releases/h15/ data.htm (last visited October 14, 2014). This specific link is no longer available as of the date of this Memorandum and thus Plaintiffs used the Bd. of Governors of the Fed. Reserve Sys. Historical Data presently found at the following link http://www.federalreserve.gov/datadownload accessed on May 28, 2020. The average prime rate for the 2020 year was not available and therefore the Plaintiffs used the prime rates published by the Bd. of Governors of the Fed. Reserve Sys. and calculated the average through June 30, 2020. http://www.federalreserve.gov/datadownload accessed on May 28, 2020. The product of the multiplier and the proposed damages amount results in the proposed prejudgment interest award. The multiplier, in this case, is 3.33127722000372 and the underlying calculations are set forth in an Excel spreadsheet filed as **(Exhibit A)** to this motion.

[7] Proposed punitive damage awards have been calculated in an amount equal to twice the total amount of compensatory damages for each group of Plaintiffs' families, which would be apportioned equally amongst each Plaintiff family member (e.g. Glenn Christie proposed compensatory award $7,000,000 + Janet Christie proposed compensatory award $2,500,000 = $9,500,000 x2 = $19,000,000).

Dated: June 2, 2020  Respectfully submitted,

/s/ Michael Miller
The Miller Firm LLC
Michael J. Miller, Esq.
D.C. Bar No. 397689
108 Railroad Avenue
Orange, VA 22960
Tel: (540)-672-4224
Fax: (540)-672-3055
MMiller@millerfirmllc.com
DDickens@millerfirmllc.com
EMaggio@millerfirmllc.com

And

/s/ Gavriel Mairone
MM~LAW, LLC
Gavriel Mairone, Esq (Admitted *pro hac vice*)
Illinois Bar No. 618698

Adora Sauer, Esq (Admitted *pro hac vice)*
Illinois Bar No. 6256703
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
Tel: (312) 253-7444
Fax: (312) 275-8590
ctlaw@mm-law.com;
adora@mm-law.com

*Counsel for Plaintiffs*